IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:07CR337 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| MATTHEW N. BATTLES, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Matthew N. Battles (Battles) (Filing No. 24). Battles is charged in the Indictment with the possession of "crack" cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Battles seeks to suppress evidence obtained by the Omaha Police Department (OPD) on August 27, 2007, following a stop of Battles while he was on foot near 30th and Dodge Streets in Omaha, Nebraska.

An evidentiary hearing was held on Battles's motion on February 12, 2008. Battles was present for the hearing along with his appointed counsel, Assistant Federal Public Defender Jeffrey L. Thomas. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. During the hearing, the court heard the testimony of OPD Officers Edith M. Andersen (Officer Andersen) and Frank Platt (Officer Platt) and the testimony of defendant Battles. The court also received into evidence a T-shirt (exhibit 102) and a pair of red gym shorts (Exhibit 101). Photographs of these exhibits were substituted in the record at the conclusion of the hearing (TR. 69). A transcript of the hearing (TR.) was filed on February 19, 2008 (Filing No. 33).

**FINDINGS OF FACT**

Around 1:30 a.m. on the morning of August 27, 2007, OPD Officers Anderson, Platt, and Milone were inside the Bucky's Express convenience store at 30th and Dodge Streets in Omaha, Nebraska (TR. 5). All three officers were taking a break from their patrol shift in the north gang unit (TR. 4). The north gang unit works the northeastern part of Omaha dealing with gang activity, particularly regarding drug activity (TR. 4). All three officers were

riding in the same unmarked OPD police car equipped with emergency lights and siren (TR. 5). Each officer was dressed in civilian clothing but each officer was also wearing a black raid vest with the word "Police" on the front and back and wearing a visible gun belt with a weapon and other equipment (TR. 7; 27). At this time, Officer Platt observed Battles cross Dodge Street by himself and walk northbound through the gas pump/parking area towards the convenience store of the gas station (TR. 27-28). Officer Platt was standing inside by the newspaper rack near the front doors of the convenience shop (TR. 27). Battles approached the front door of the convenience shop and reached out to open the door, made eye contact with Officer Platt, put his arms down, and walked rapidly away (TR. 29). Officer Platt did not observe anything in Battles's hands (TR. 36). After approximately five feet, Battles began running away (TR. 29). Officer Anderson said: "Did you see that guy (TR. 8)?" Officer Platt said: "Mr. Money is running down the street (TR. 30)." The officers had not encountered Battles before this incident (TR. 60). The reason Officer Platt called Battles "Mr. Money" was Battles was wearing a shirt with a bunch of different bills screen printed on it, such as 100 and 50 dollar bills (TR. 30). Officer Platt also said "Now he's running, and he just ran across 30th Street, jaywalked across 30th Street (TR. 8)". The officers quickly decided they would attempt to find "Mr. Money" (TR. 8).

All three officers got into the unmarked police car and drove north on 30th Street (TR. 8). Officer Andersen recalled driving (TR. 8) as did Officer Platt (TR. 30). Battles was running through an alley that connects the two 30th Streets (northbound and southbound) (TR. 30). The officers pulled into the alley and Officer Platt observed Battles attempt to run through southbound 30th Street (TR. 30). Officer Platt stopped Battles for jaywalking by stopping the police car in the alley, getting out of the car and yelling to Battles "Hey, stop, come here" or words to that effect (TR. 30, 46). Battles stopped and started to walk back towards the officers (TR. 32). Officer Platt recalled seeing an unlit marijuana "blunt" in Battles's hand (TR. 32)[1]. Officer Platt recalled he only saw a partial "blunt" in Battles's hand and assumed it to be a marijuana "blunt."(TR. 39). Officer Platt ordered Battles to put his

---

[1] Officer Platt described a "blunt" as a distinctive shaped cigar, such as a Swisher Sweet, which is hollowed out and refilled with marijuana. Officer Platt testified he deals with "blunts" on an almost daily basis (TR. 32).

hands on Battles's head and as Battles did so, Officer Platt removed the "blunt" and handed it to Officer Andersen (TR. 9; 39). Officer Platt placed Battles in handcuffs and informed Battles he was under arrest for possession of marijuana (TR. 33). Officer Platt stated that incident to the arrest, he patted Battles down and found a plastic baggie of marijuana in Battles's right front jeans pocket (TR. 10; 33). Officer Platt continued his pat down of Battles and found a drawstring hanging out of the front of Battles jeans (TR. 11; 33). The drawstring was part of a pair of shorts Battles was wearing underneath the jeans (TR. 50). Attached to the string was a plastic baggie containing "crack" cocaine (TR. 11; 34). Subsequently, Battles was transported to Central Police Station and booked.

Battles testified he had a marijuana "blunt" but it was in his left back pocket and not in his hand when approached by Officer Platt (TR. 59). Battles testified Officer Platt pulled Battles's shirt over his head and pulled on the drawstring on his shorts which contained the plastic baggie (TR. 57). Battles recalls Officer Platt using a pocketknife to cut the baggie from the pants's string (TR. 52). Battles testified when first encountered by Officer Platt he was told by Officer Platt the officers were looking for a sexual assault victim (TR. 56). Battles testified Officer Platt wanted Battles to purchase "crack" cocaine or Battles would go to jail (TR. 58).

The court discounts Officer Platt's testimony he saw a "blunt" in Battles's hand. Officer Platt testified he reasonably believed this "blunt" to be marijuana. Given that the encounter took place at 1:30 a.m. in an alley between two streets (albeit "pretty well-lit (TR. 9)" according to Officer Andersen), that nothing was observed in Battles's hands when Battles was at the convenience store doors, that Battles was running from the police officers and it would be reasonable to assume Battles would not be exposing a marijuana "blunt"in his hands, that the "blunt" was partially hidden by Battles's hand (according to Officer Platt) making it difficult to determine the "blunt" was contraband, and Battles's testimony that he had the "blunt" in his rear pocket, the court concludes Officer Platt either found the "blunt" in Battles's pants pocket when Battles was frisked by Officer Platt or that Officer Platt did not have probable cause to arrest Battles for possession of marijuana upon first seeing Battles. The court finds Officer Platt's frisk of Battles as "incident to arrest" for

possession of marijuana was erroneous as measured against a standard of "objective reasonableness."

## LEGAL ANALYSIS

Battles argues the "crack" cocaine found in his clothing was the product of his illegal detention and an illegal search of his person when the officers first encountered Battles in the alley. The government argues the officers were justified in pursuing and detaining Battles on account of Battles's running from the Bucky's Express convenience store. The burden is on the government to justify a warrantless search. ***Carter v. United States***, 729 F.2d 935, 940 (8th Cir. 1984). Having previously determined that Officer Platt did not have probable cause to arrest Battles for the possession of the marihuana "blunt" upon Officer Platt's first sight of Battles, the evidence seized in this case, i.e., the marihuana "blunt", the baggie of marihuana, and the baggie of "crack" cocaine resulted from the frisk of Battles by Officer Platt. The issue before the court is the justification for such a frisk.

### Flight From Officers

At 1:30 a.m. on August 27, 2007, after Battles walked across the street at 30th and Dodge Streets, Battles approached the door of the Bucky's convenience store, made eye contact with the police officers, walked briskly away from the door, and commenced to run across the street. The government argues such conduct constituted reasonable suspicion that there was ongoing criminal activity and justified the detention and investigation of Battles by the OPD officers pursuant to ***Terry v. Ohio***, 392 U.S. 1 (1968).

While no evidence or testimony was adduced by the government that the Bucky's gas station and convenience store at 30th and Dodge Streets was located in a high crime area, Battles's evasive behavior is a pertinent factor in determining reasonable suspicion required for a ***Terry*** stop. In ***Illinois v. Wardlow***, 528 U.S. 119 (2000), Chief Justice Rehnquist wrote for the majority: "Headlong flight - <u>wherever it occurs</u> - is the consummate act of evasion. It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." ***Id.*** at 124 (emphasis added). In ***Florida v. Royer***, 460 U.S. 491 (1983), the Supreme Court held a person has a right to ignore police and go about one's business and

such action alone does not furnish a police officer with reasonable suspicion or probable cause to detain a person.  Ignoring the police is one matter, but it is all together different if the suspect runs from the police.  Chief Justice Rehnquist further wrote in *Wardlow*, "Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite.  Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning."  *Wardlow*, 528 U.S. at 125.  *Terry* and the Fourth Amendment accepts the risk that police officers may stop innocent persons to avoid more drastic police actions.  *Id.* at 126.  Such a detention can resolve an ambiguity of criminal activity or mere innocent activity.  The court must look to the totality of the circumstances in gauging the sufficiency of the reasonableness of suspicion warranting a *Terry* stop because flight is a factor, together with other factors, which can support a reasonable suspicion.  *Id.* at 124.

A pedestrian approaching a gas station convenience store at 1:30 in the morning and taking flight upon approaching the convenience store door after making eye contact with a person inside clad as a police officer may constitute sufficient reason to suspect criminal activity justifying a *Terry* stop.  But a *Terry* stop does not authorize a search for evidence.  *Terry* authorizes a detention for investigation of a crime and allows a frisk for weapons if there is a reasonable suspicion to believe that the suspect is armed and dangerous.  Here, neither Officer Platt nor Officer Andersen articulated any suspicion, reasonable or otherwise, that Battles was armed or dangerous.  Accordingly, even if Battles's flight from the officers under the circumstances of that evening would justify a *Terry* stop to investigate, Officer Platt articulated no basis to frisk Battles except for Battles being placed under arrest for possession of the marihuana "blunt".

However, in this case, as Officer Platt and the other officers were about to give chase, Officer Platt observed Battles committing the offense of jaywalking in the northbound lanes of 30th Street.  By the time the officers caught up to and encountered Battles, Officer Platt also observed Battles jaywalking again across the southbound lanes of 30th Street after leaving the alley.  At that time, Battles was called back across the street to the officers' location in the alley.

Jaywalking is an offense under the Nebraska traffic laws, Neb. Rev. Stat. § 60-6,154, and under the Municipal Code of the City of Omaha, § 36-112. Apparently, jaywalking is a traffic infraction under the Nebraska traffic laws, Nebr. Rev. Stat. § 60-682. Section 1-10 of the Municipal Code of the City of Omaha provides that if no specific penalty is provided for a violation, the act "shall be punished by a fine not exceeding $500.00, or by imprisonment not to exceed six months, or both such fine and imprisonment . . . ," i.e., a misdemeanor. Thus, Officer Platt could have arrested Battles for jaywalking and searched Battles incident to that arrest. **Chimel v. California**, 395 U.S. 752 (1969). The right to conduct such a search incident to arrest is absolute and not determinative of any concern for officer safety or destruction of evidence. Searches of a person incident to arrest are per se reasonable under the Fourth Amendment. **United States v. Robinson**, 414 U.S. 218, 226 (1973).

While Officer Platt articulated that the basis for the arrest of Battles was for possession of the marihuana "blunt," a basis not found to be based on probable cause at the time, there was probable cause also to arrest Battles for jaywalking. The stated reason for Officer Platt's arrest need not be controlling. The court may look to the objective facts of the situation rather than the subjective reasoning of Officer Platt. Accordingly, the court "need not determine how these officers concluded that they had probable cause to arrest." **United States v. Kalter**, 5 F.3d 1166, 1168 (8th Cir. 1993). The court must "ask instead whether a prudent person, who knew about the [relevant] ordinance and who observed what these officers saw, could have believed that [the defendant] had committed or was committing a crime at the time of his arrest." *Id.* (**citing United States v. Slupe**, 692 F.2d 1183 (8th Cir.1982)). "Probable cause exists when, at the time of the arrest, 'the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested.'" **United States v. Martinez**, 462 F.3d 903, 908 (8th Cir. 2006) (**quoting United States v. Kelly**, 329 F.3d 624, 628 (8th Cir. 2003)). Therefore, whether probable cause existed for an arrest must be determined at the time of the arrest. "Probable cause exists if the totality of the circumstances known to all officers involved at the time of the arrest 'were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an

offense.'" ***United States v. Mendoza***, 421 F.3d 663, 667 (8th Cir. 2005) (**quoting** ***United States v. Cabrera-Reynoso***, 195 F.3d 1029, 1031 (8th Cir. 1999) (citation and internal quotations omitted) and **citing** ***United States v. Amaya***, 52 F.3d 172, 174 (8th Cir. 1995) (totality of the circumstances). There being probable cause for the arrest of Battles for jaywalking, which was the original offense Officer Platt gave for the pursuit of Battles, the arrest of Battles was justified for the jaywalking offense.

During the search incident to Battles's arrest, the plastic baggie of marihuana was found in Battles's pocket. Further, Battles testified the marihuana "blunt" was in his pants pocket. Battles also testified the baggie of "crack" cocaine was tied to his shorts's draw string and was found by Officer Platt. While there is a dispute between Officer Platt and Battles regarding the sequence of discovery and the manner in which the evidence was retrieved, the differences are immaterial since there is no dispute that the evidence was found on Battles during the alleged search incident to arrest. As such, the evidence is admissible in evidence against Battles at trial. Battles's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Battles's motion to suppress (Filing No. 24) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 2nd day of April, 2008.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge